Jacob Markowitz, J.
Plaintiff sued defendant to recover damages based upon alleged breach of trust by the directors of a corporation known as Rejak Corporation, in that they disposed of corporate assets without prior provision for plaintiff as a creditor of the corporation.
One, Harry S. Sheresky (now deceased and hereinafter referred to as “ Harry ”), was the sole stockholder and president of Rejak. He had, in behalf of Rejak, executed promissory notes to the plaintiff in the sum of $23,217 and personally indorsed all of the notes. The circumstances leading to the execution of the notes were as follows: Rejak owned a theatre building in Louisville, Kentucky. The lease on the building was held by Scoop-Louisville Theatre Inc. as lessee (hereinafter referred to as “ Scoop ”). Plaintiff was the sole stockholder and president of Scoop. Harry in negotiating for the sale of the property had to obtain a surrender of the aforesaid lease *280 from, plaintiff’s corporation. Negotiations to that end took place between them while plaintiff was in the United States.
Plaintiff was advised by his tax experts and attorneys not to negotiate the deal until after he had acquired the leasehold as an individual by dissolution of Scoop and a transfer of the lease to himself and that he should not accept the offer for the leasehold while he be present in the United States. In that manner, as he was a Swiss national and a resident of Prance, he could avail himself of our tax laws and not be subject to a capital gains or income tax upon any phase of the transaction. He was represented in the negotiations throughout by counsel. His attorneys outlined the entire plan of operation and procedure to be followed including the terms to be incorporated in the agreement, the escrow arrangements, the manner of acceptance by plaintiff, the delivery of the notes, the retention of an interest in certain personal property and other phases of the transaction. His attorney provided, among other things, ‘1 that each of the above-mentioned promissory notes shall be personally endorsed and guaranteed by Harry Sheresky, who shall submit, at the time of closing, as the inducing of cause for Velaise’s acceptance of his guarantee a financial statement showing a net worth of not less than $1,600,000 In accordance with the arrangements, the notes were executed and indorsed by Harry personally. Plaintiff then had the lease of Scoop assigned to himself and within a few days thereafter he caused the Scoop-Louisville Theatre corporation to be dissolved. On his return to Prance from New York he forwarded the letter of acceptance, and thereupon the notes which were held in escrow were delivered to plaintiff’s representative, one Peter Geiger, in accordance with his written instructions.
Thereafter the notes which matured prior to Harry’s death on October 20, 1953, were all paid from his personal account. They totaled 11 in number. The 12th note was defaulted and protested on or about November 1, 1953, the due date. In accordance with the provisions of the notes all the remaining notes became due and payable.
Plaintiff claims that then, for the first time, he learned that Rejak had been dissolved in November, 1952, the corporate assets transferred to Harry and that Harry’s personal estate was insolvent and insufficient to pay his notes. He, therefore, asserts his claim against the defendant Richard A. Sheresky, Harry’s son, upon the theory that, as an officer and director of Rejak, he violated Ms duties in that he had assisted Harry in the dissolution of Rejak and in the transfer of all of its assets to Harry personally, to the detriment of the plaintiff.
*281 The defendant claims that the plaintiff knew at the time he received the notes that Harry Sheresky contemplated the sale of the property; that Harry would dissolve Rejak, take title to the property unto himself and then personally effect the sale and personally retain the proceeds of the sale; that plaintiff’s leasehold had to be surrendered before Harry could sell his property; that the notes, required to be indorsed by Harry, were executed by Rejak solely because Rejak was the then record owner of the property; and that the plaintiff looked to Harry and not Rejak for payment. Accordingly, defendant asserts that plaintiff’s complaint, founded on his asserted lack of knowledge of the disposition of Rejak’s assets to Harry personally, is not founded in fact and is untenable. Defendant also claims the three-year Statutes of Limitation of the States of New York and Delaware are a bar to the cause of action herein.
The evidence established that “ plaintiff and Harry were astute businessmen ”. Plaintiff regarded Harry as “ super-smart ’ ’, knew his way around. Plaintiff admitted that he was informed by Harry and his Louisville attorney that Harry was negotiating to sell the theatre property to a Mr. Brown in Louisville, Kentucky, at a “ fabulous profit ’ ’.
On November 12, 1952, the assets of Rejak including the theatre property were turned over to Harry personally and in accordance with the corporate resolution he assumed all the obligations of Rejak. Title to the theatre property was transferred from the corporation to Harry personally. On November 14, 1952, the theatre property was sold by Harry personally. It is noteworthy that the closing statement, dated November 14, 1952, covering the sale of the theatre property by Harry personally indicates “ check to Peter Geiger agent for Robert Yelaise and Scoop-Louisville Theatre Inc. for Scoop equipment $2,500 ”. The same closing statement indicates that the net proceeds of the sale in the sum of $156,033.54 were by three checks to the order of Harry.
Significant is the fact that plaintiff failed to call as witnesses his New York or Louisville attorneys, his representative Peter Geiger, the attorney who represented Harry and Rejak, or any others to corroborate his testimony in any respect.
I am convinced that the plaintiff was told and that he knew that Harry intended for tax purposes to dissolve Rejak; turn over the assets of Rejak to himself; and then, individually, sell the property and personally retain the proceeds of the sale; and that he looked for payment of the notes to Harry personally and not Rejak. It is incredible to believe that the plaintiff did *282 not know or that he was not informed by his own representative, Geiger, or his Louisville attorney who also represented the purchaser of the property as to the events that took place at the closing. It is uncontradicted that defendant received none of the assets of, or income of Rejak, or any of the proceeds of the sale of the property. I therefore find on the issues presented that the first affirmative defense was established and that the plaintiff has failed to establish his cause of action and the complaint must be dismissed on the merits.
The other defense discussed — the Statute of Limitations — also bars recovery. The cause of action is not upon the notes. The essence of plaintiff’s complaint and attempted proof against the defendant is that he breached his fiduciary duty to plaintiff as a director of Rejak by wasting or injuring the assets of Rejak to plaintiff’s damage and that had the distribution not been made to Harry, the corporate assets transferred or wasted could have been used to pay plaintiff’s claim on the notes. This clearly brings plaintiff’s cause within the ambit of the application of subdivision 7 of section 49 of the Civil Practice Act, its three-year Statute of Limitations, and not subdivisions 1 and 8 of section 48 of the Civil Practice Act. (See Druckerman v. Harbord, 31 N. Y. S. 2d 867; Scott v. Allen, 264 App. Div. 424; Gottfried v. Gottfried, 269 App. Div. 413; Potter v. Walker, 276 N. Y. 15, 26; Ziring v. Corrugated Container Corp., 183 Misc. 600; Kalmanash v. Smith, 291 N. Y. 142.) Since the alleged wrong complained of accrued on November 12, 1952, four years before the date of the commencement of this action, the statute (Civ. Prac. Act, § 49, subd. 7) is a bar to the action.
This constitutes the decision of the court in conformity with section 440 of the Civil Practice Act. The clerk is directed to enter judgment in favor of the defendant dismissing the complaint.